## AFFIDAVIT

I, Kathleen M. Nolan ("Investigator Nolan"), having been duly sworn, hereby depose and state:

1. I am an Investigator with the Office of Labor-Management Standards (OLMS) of the United States Department of Labor (DOL), and am assigned to the Washington District Office. I have been employed at OLMS since December 2005. I investigate criminal violations of matters relating to embezzlement of union funds by union officers and/or employees. I have completed training in criminal investigations through our agency's internal training program.

2. I make the following statements based on information obtained through personal observations.

3. This Affidavit is being submitted for the limited purpose of supporting applications for a criminal complaint. Thus, I have not set forth each and every fact learned during the course of this investigation.

4. The facts and circumstances set forth below in this Affidavit demonstrate that there is probable cause to believe that Kevin Jones has committed the offense of embezzlement from a labor organization in violation of 29 U.S.C. 501(c).

## FACTS SUPPORTING PROBABLE CAUSE

5. Kevin Jones is a resident of Washington, DC. In March 2007, Jones was appointed President of Metropolitan Campus Police Officers Union (MCPOU), representing approximately 140 campus police officers employed by Howard University and Howard University Hospital in Washington, DC.

6. MCPOU represents its members with respect to wages, hours, and other terms and conditions of employment in collective bargaining with Howard University and Howard University Hospital. MCPOU is governed by a constitution and bylaws.

7. During the time Jones was President of MCPOU, all of MCPOU's income came from membership dues. MCPOU members would have their dues withheld from their pay check every pay period by Howard University and Howard University Hospital, which would in turn forward dues money to MCPOU. Jones deposited those dues checks into MCPOU's checking account at PNC Bank (acct. num. ******3001). Jones and MCPOU Treasurer Kim Salmond were the signatories on MCPOU's checking account.

8. Jones received a $200 per month stipend for serving as MCPOU president. Jones was not entitled to any other payments from MCPOU.

9. Between June 2007 and June 2010, Jones made 182 ATM withdrawals with a debit card issued on the MCPOU bank account, totaling $50,848.45. Jones typically withdrew $500 in cash from an ATM at a time. In the month of August 2007, Jones made 14 ATM withdrawals totaling $6,480. When interviewed by Department of Labor investigators, MCPOU officers stated that these withdrawals were not authorized by MCPOU and do not appear to serve a legitimate union purpose. When interviewed, Jones stated that MCPOU did not have many expenses and that disbursements from the MCPOU account were paid by either by check or with MCPOU's debit card.

10. Between May 2007 and July 2010, Jones made 222 purchases with the same debit card which not authorized by MCPOU and do not appear to serve a legitimate union purpose. Jones made purchases to vendors including, but not limited

to:

--$3,374.37 to DC Water Authority to pay an account held by for his brother;

--$1,753.17 to the Apple Store for a new computer;

--$790 to DC Ticket Payment for unpaid traffic tickets;

--$460 to the Marriott Hotel in Dallas, Texas during a weekend when the Washington Redskins played the Dallas Cowboys.

11. Between September 2009 and October 2009, Jones made three counter withdrawals from MCPOU's account, totaling $1,400. When interviewed by Department of Labor investigators, MCPOU officers stated that these withdrawals were not authorized by MCPOU and do not appear to serve a legitimate union purpose.

12. Based on interviews with Jones and numerous officers and members of MCPOU, it was determined that some of the cash that Jones withdrew from MCPOU's account was for legitimate union expenses. After conducting a review of MCPOU financial records with MCPOU officers, I concluded that the maximum amount of MCPOU funds legitimately expended by Jones totaled approximately $20,200. In my review, Jones was credited with the $200 per month stipend for the 38 months that he served as the MCPOU president, totaling $7,600.

13. MCPOU maintained a petty cash fund for minor expenses. Salmond stated that MCPOU usually spent $200 a month for petty cash. Some of Jones' ATM withdrawals could possibly have been for MCPOU's petty cash fund, even though there is no documentation showing that this was the case. For potentially putting $200 in MCPOU's petty cash account every month, Jones is credited $200 a month for the 38 months that he served as the MCPOU president, totaling $7,600.

14. When interviewed, Jones stated that some of his ATM withdrawals were used for cash loans that he made to MCPOU members in need. Jones said that he gave loans of either $500 or $1,000 to five members, although MCPOU had no records of these loans being made. I was able to interview three of the five members that Jones named, and confirmed that one of the members had received a $500 cash loan from Jones. Jones was thereby credited $5,000 for the loan that he made to that MCPOU member and for any other loan he may have made while he served as MCPOU president.

15. With the above credits conceded, between May 2007 and July 2010, Jones embezzled a total of $45,394.12 from MCPOU.

16. Jones' thefts from the MCPOU account were discovered when Jones refused to comply with an audit by MCPOU's international union, International Union, Security, Police, Fire Professionals of America (SPFPA). When Gabriel Adegoke, the new MCPOU president, took office in either June or July 2010, he noted that Jones had not maintained any of MCPOU's bank statements or any other financial records. Adegoke then obtained MCPOU's bank statements directly from PNC Bank and realized that Jones had made numerous unauthorized disbursements and ATM withdrawals.

## CONCLUSION

17. Based upon on the facts set forth above, your Affiant submits respectfully that there is probable cause to establish that Jones committed the offense of theft from a labor organization in violation of 29 U.S.C. 501(c). Your Affiant respectfully requests that a criminal complaint be issued as prayed.

_____
Kathleen Nolan
Investigator
Office of Labor-Management Standards
U.S. Department of Labor


Sworn to and subscribed before me